# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 1, 2022

Lyle W. Cayce
Clerk

No. 20-60332

CRIMILDA CECILIO RODRIGUEZ, *also known as* CRIMI CECILIO,

*Petitioner*,

*versus*

MERRICK GARLAND, *U.S. Attorney General*,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. 205 290 602

Before STEWART, ELROD, and GRAVES, *Circuit Judges*.
JAMES E. GRAVES, JR., *Circuit Judge*:*

Petitioner Crimilda Cecilio Rodriguez was ordered removed *in absentia* after she failed to appear for her removal hearing before an Immigration Judge (IJ). She moved to reopen her case arguing she did not receive notice of the hearing despite having updated her address with Immigration and Customs Enforcement (ICE) officials during periodic

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-60332

"check-ins." The IJ denied the motion and the Board of Immigration Appeals (BIA) dismissed the subsequent appeal. Because the determination that Cecilio Rodriguez did not inform ICE of her address change is supported by substantial evidence, we DENY in part and DISMISS in part the petition.

I.

Cecilio Rodriguez is a native and citizen of Mexico. She entered the United States without inspection in October 2000. In April 2012, Cecilio Rodriguez was detained by the Department of Homeland Security (DHS). She was released on her own recognizance and was ordered to report to a DHS/ICE officer on May 22, 2012.

When Cecilio Rodriguez reported on May 22, 2012, an ICE officer personally served her with a notice to appear (NTA) charging her removable as an alien present in the United States without being admitted or paroled. The NTA did not contain a date and time for the hearing. The NTA listed Cecilio Rodriguez's address as 1000 Country Place #43, Houston, Texas 77079.

The DHS filed the NTA with the Immigration Court on July 2, 2012, vesting jurisdiction with the Immigration Court. 8 C.F.R. § 1003.14(a). On July 5, 2012, a notice of hearing (NOH) was mailed to the address Cecilio Rodriguez provided on the NTA.

Cecilio Rodriguez's hearing was rescheduled several times, and subsequent NOHs were sent as follows. The July 5, 2012 NOH ordered Cecilio Rodriguez to appear on August 5, 2013. On June 28, 2013, a second NOH was mailed to Cecilio Rodriguez ordering her to appear on June 30, 2014. That second NOH was returned as undeliverable. Thereafter, on March 20, 2014, a third NOH was mailed to Cecilio Rodriguez ordering her to appear on June 8, 2015. On March 20, 2015, the Immigration Court mailed

a fourth NOH informing Cecilio Rodriguez that the June 8, 2015 hearing had been cancelled, and that the hearing was set for November 29, 2019. A fifth NOH was mailed on February 27, 2018, setting the hearing for April 23, 2018. The fifth NOH was returned as undeliverable. A sixth and final NOH was mailed on April 23, 2018, setting the hearing for October 1, 2018.

After Cecilio Rodriguez first reported in May 2012, she was required to attend regular "check-ins" with ICE. First, she was required to check in every three months, later changed to six months, and finally, every year. On some unspecified date between May 2012 and December 2018, Cecilio Rodriguez moved to a new address at 540 County Road 347 S., Cleveland, Texas 77327. According to Cecilio Rodriguez, "every time [she] reported [her]self to ICE, [she] would give them [her] new address."

Then "[d]uring one of [her] check-ins," Cecilio Rodriguez asked the ICE officer about her hearing date, and he wrote down on a piece of paper that her hearing was scheduled for November 29, 2019.[1] There is no evidence of when this interaction occurred. Although Cecilio Rodriguez consulted with an attorney shortly after she found out about the November 29, 2019 hearing, she did not hire the attorney. The attorney did, however, call the Immigration Court hotline and reported that the hearing was still set for November 29, 2019.

Cecilio Rodriguez did not appear for her removal hearing on October 1, 2018, and she was ordered removed *in absentia*. She filed a timely motion to reopen and rescind the *in absentia* order on March 11, 2019. *See* 8 C.F.R. § 1003.23(b)(4). She urged reopening because she did not receive

---

[1] Because the ICE officer stated the hearing was scheduled for November 29, 2019, this must have occurred at an ICE check-in between March 20, 2015, and February 27, 2018—the period of time that the hearing was set for 2019.

No. 20-60332

notice of the hearing and her failure to appear was due to exceptional circumstances. To show that she was entitled to notice, she argued she complied with her obligation to notify the Immigration Court of her address change by notifying ICE during her required periodic check-ins. Lastly, Cecilio Rodriguez argued that the IJ should reopen her case *sua sponte*.

The IJ denied the motion to reopen on July 5, 2019. The IJ noted that Cecilio Rodriguez's arguments regarding lack of notice and exceptional circumstances lacked merit. Regarding the claim that Cecilio Rodriguez notified DHS/ICE of her change of address, the IJ found the record did not support the claim. Cecilio Rodriguez appealed to the BIA.

The BIA agreed with the IJ, adopted its decision, and dismissed Cecilio Rodriguez's appeal. Cecilio Rodriguez petitions this court for review.

## II.

In a petition for review, we review only the BIA's decision unless the IJ's decision had some impact on the BIA's decision. *Fuentes-Pena v. Barr*, 917 F.3d 827, 829 (5th Cir. 2019). To the extent that the BIA relied on or adopted the IJ's decision, this court may consider the decisions of both the IJ and the BIA. *See Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). Here, the BIA adopted the IJ's decision, and so we review both decisions. *Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir. 1997); *see also Wang*, 569 F.3d at 536.

Factual findings are reviewed for substantial evidence, which means we accept "factual findings unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise." *Fuentes-Pena*, 917 F.3d at 829 (internal quotation marks and citations omitted). "Under substantial evidence review, [we] may not reverse the BIA's factual findings unless the evidence compels it." *Wang*, 569 F.3d at 536-37 (citations omitted); *see also Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012) ("[R]eversal is improper unless the court decides not only that the evidence supports a

contrary conclusion, but also that the evidence *compels* it." (internal quotation marks and citation omitted) (emphasis in original)). We review questions of law de novo. *Fuentes-Pena*, 917 F.3d at 829.

Also, in this case we are reviewing a denial of a motion to reopen. These motions are disfavored, and our review is "under a highly deferential abuse-of-discretion standard." *Cruz v. Barr*, 929 F.3d 304, 307 (5th Cir. 2019) (internal quotation marks and citation omitted), *as revised* (Sept. 6, 2019). We must deny a petition for review unless the BIA's decision is entirely capricious, irrational, or unfounded. *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). "The [BIA] may not ignore critical evidence or draw absurd conclusions from it." *Martinez-Guevara v. Garland*, 27 F.4th 353, 362 (5th Cir. 2022) (citations omitted). "But anything short of that must stand." *Id.*

## III.

## A.

Cecilio Rodriguez contends the IJ and BIA improperly concluded she needed to independently notify the Immigration Court of her address change. She contends she fulfilled her obligations to notify the government of her address change by informing ICE during her periodic check-ins. *See Fuentes-Pena*, 917 F.3d at 831 (holding that a petitioner "satisfied her obligation to provide her new address to the 'Attorney General' by notifying ICE of her change of address" when the NTA had not yet been filed with the Immigration Court). Because the panel in *Fuentes-Pena* "express[ed] no opinion on an alien's statutory obligations after the NTA has been filed with the immigration court[,]" *id.* at 831 n.3, as is the case here, Cecilio Rodriguez urges us to address this question. We need not decide this issue, however, because substantial evidence supports the IJ's and BIA's determination that Cecilio Rodriguez did not inform ICE of her address change in any event.

If a noncitizen receives written notice of her removal hearing but fails to attend, she shall be ordered removed *in absentia* if DHS establishes her removability. 8 U.S.C. § 1229a(b)(5)(A); *see* 8 C.F.R. § 1003.26(c). An *in absentia* removal order may be rescinded, and the proceedings reopened, if the noncitizen demonstrates that she did not receive written notice of the hearing conducted *in absentia*. 8 U.S.C. § 1229a(b)(5)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(ii). Written notice is not required, however, when a noncitizen "has failed to keep the immigration court apprised of [her] current mailing address." *Gomez-Palacios*, 560 F.3d at 359; *see also* 8 U.S.C. §§ 1229(a)(2)(B), 1229a(b)(5)(B).

To have a removal order rescinded, a petitioner must show that she did not receive "notice in accordance with paragraph (1) or (2) of section 1229(a)." 8 U.S.C. § 1229a(b)(5)(C)(ii). And in a motion to reopen, a petitioner has the burden to demonstrate that she did not receive that notice. *See Fuentes-Pena*, 917 F.3d at 830.

Cecilio Rodriguez was personally served with an NTA on May 22, 2012, which warned her that she was required to keep both DHS and the Immigration Court apprised of her current address and that she would be removed *in absentia* if she failed to appear. Thereafter, all NOHs were sent to the address Cecilio Rodriguez provided in May 2012. Cecilio Rodriguez does not state whether she received any of the six NOHs.

Although Cecilio Rodriguez does not dispute she did not notify the Immigration Court of her address change, she argues she notified ICE of her address change which, in her view, was sufficient to meet her statutory obligations. *Cf. Gomez-Palacios*, 560 F.3d at 360–61 (holding the failure to receive actual notice of a removal hearing because petitioner failed to inform the immigration court of his current address does not mean that the petitioner did not receive the statutorily required notice). We assume

No. 20-60332

without deciding that Cecilio Rodriguez could satisfy her statutory obligations by notifying ICE of her updated address after an NTA is filed with the Immigration Court. *See Fuentes-Pena*, 917 F.3d at 831 & n.3 (leaving question open). But even with this assumption, substantial evidence supports the IJ's and BIA's conclusions that Cecilio Rodriguez did not even notify ICE of her address change.

Cecilio Rodriguez submitted an affidavit to the IJ stating that she informed ICE of her address change. She did not state when she moved, when she informed ICE of her address change, and whether she received *any* of the NOHs that were sent to her first address (only two of them were returned as undelivered). Cecilio Rodriguez also submitted "records" of her check-ins with ICE, but they only showed six dates over six years with signatures from ICE officers.

The IJ stated "[w]ith regard to [Cecilio Rodriguez's] claim that she notified DHS of her address changes when she reported to authorities following her release on recognizance, the record does not support that contention." The IJ concluded that Cecilio Rodriguez's evidence did not indicate that she provided ICE officers with a different address, but rather simply listed dates that she reported to ICE. This is a factual finding that Cecilio Rodriguez did not notify ICE of her address change.[2] We will not disturb this finding unless the evidence compels it. *See Wang*, 569 F.3d at 536–37. Because the only evidence to the contrary is Cecilio Rodriguez's vague and conclusory attestation, we conclude the finding is supported by

---

[2] The BIA's decision is instructive as well. The BIA specifically stated that Cecilio Rodriguez's argument fails to account for relevant timing to support her contention. The BIA emphasized that Cecilio Rodriguez did not state *when* she notified ICE of her address change. It also noted that by the time Cecilio Rodriguez had started reporting back to ICE (three months after the NTA was served), the first NOH would have already been issued (six weeks after the NTA was served).

substantial evidence. *See Martinez-Guevara*, 27 F.4th at 362 (stating the BIA "need only show that it considered the petitioner's claim, supported its view with some evidence, and did not ignore facts that would render its decision entirely unreasonable").

Assuming Cecilio Rodriguez could satisfy her statutory obligations by notifying ICE of her address change,[3] substantial evidence supports the IJ's and BIA's conclusions that she did not even do that. We therefore deny the petition on this claim.

## B.

Cecilio Rodriguez next argues the BIA erred in concluding her failure to appear was not due to exceptional circumstances and in declining to assess whether new evidence warranted remand to the IJ. An *in absentia* order may be rescinded and reopening warranted if a petitioner "demonstrates that she failed to appear for a removal hearing due to an exceptional circumstance. 8 U.S.C. § 1229a(b)(5)(C)(i); 8 C.F.R. § 1003.23(b)(4)(ii). Exceptional circumstances are defined as "battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances" beyond the control of the alien. 8 U.S.C. § 1229a(e)(1). Here, the circumstances were not beyond Cecilio Rodriguez's control. Cecilio Rodriguez failed to appear because, as she admits, she failed to provide the Immigration Court with her address change. And as the IJ

---

[3] The BIA distinguished *Fuentes-Pena* from Cecilio Rodriguez's case. It also concluded that once the NTA has been filed with the Immigration Court, a noncitizen's "regular reporting to ICE and submission of address changes to ICE [does not] satisf[y] her duty to notify the Immigration Court of her change in address." We, again, express no opinion on this issue. *See Fuentes-Pena*, 917 F.3d at 831 n.3.

No. 20-60332

found, and BIA accepted, Cecilio Rodriguez did not notify ICE of her address change either. We deny this claim as well.

On her new evidence claim, Cecilio Rodriguez failed to exhaust it before the BIA. Cecilio Rodriguez maintains that the BIA "did not acknowledge or even consider" whether new evidence that she submitted warranted a remand to the IJ, and thus abused its discretion. She claims that she met all the substantive requirements for a motion to remand and her arguments should have been construed as such. She further claims that the BIA abused its discretion by not considering whether a remand was warranted.

"Petitioners fail to exhaust their administrative remedies as to an issue if they do not first raise the issue before the BIA, either on direct appeal or in a motion to reopen." *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009). Thus, when the BIA decision itself results in a new issue, that issue must first be addressed by the BIA before judicial review is available. *Id.* at 320; *see also Claudio v. Holder*, 601 F.3d 316, 319 (5th Cir. 2010). Failure to exhaust an issue creates a jurisdictional bar. *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004). Cecilio Rodriguez never filed a motion to reconsider arguing that the BIA abused its discretion by failing to consider her new evidence and consider whether to remand her case. This claim is therefore unexhausted and we dismiss this portion of the petition.

C.

After briefing was completed in this case, Cecilio Rodriguez submitted a Rule 28(j) letter informing the court that the Supreme Court's opinion in *Niz Chavez v. Garland*, 141 S. Ct. 1474 (2021), could impact this case. *Niz-Chavez* explained that an NTA does not constitute "notice" sufficient to trigger the stop-time rule unless the NTA contains all the required information mandated by § 1229(a) in a single document, including the date,

time, and place of the hearing. *Id.* at 1485–86. Using *Niz-Chavez*'s reasoning, Cecilio Rodriguez argues that her *in absentia* order is invalid because her NTA did not contain the date and time of her hearing. Without the date and time, she urges, it did not constitute a "notice to appear" under *Niz-Chavez*. *Id.*

Pursuant to this court's decision in *Rodriguez v. Garland*, an NTA that lacks the date and time is insufficient to give notice and warrants vacating a BIA decision that allows notice to be given in subsequent NOHs. 15 F.4th 351, 355 (5th Cir. 2021); *see, e.g.*, *Ramirez De Ayala v. Garland*, No. 20-60866, 2022 WL 2156833, at *1 (5th Cir. June 15, 2022) (unpublished) ("Ramirez De Ayala's NTA was invalid because it did not include the date and time of her removal hearing, and the deficiency was not cured by subsequent notices." (citation omitted)); *Garcia-Turcios v. Garland*, No. 20-61008, 2022 WL 2132535, at *1 (5th Cir. June 14, 2022) (unpublished) ("In light of *Niz-Chavez* and *Rodriguez*, the BIA's denial of Garcia-Turcio's motion to reopen was an abuse of discretion because it was based on an erroneous interpretation of the law." (citation omitted)).

This case is different, however, because Cecilio Rodriguez did not exhaust her claim before the BIA. Cecilio Rodriguez's motion to reopen and appeal to the BIA made almost no mention of an argument to challenge the deficient NTA based on the failure to set a date and time. In a single sentence, Cecilio Rodriguez stated "[t]he putative NTA did not contain the date and time of hearing, as required by § 239(a) of the Act (8 U.S.C. § 1229(a))." She otherwise said nothing about the validity of the NTA itself and whether it provided her sufficient notice. Nor did she state a claim regarding statutory notice due to the defective NTA.

In contrast, other similarly situated petitioners who have successfully obtained relief pursuant to *Rodriguez* first argued in the BIA and in their

opening briefs of this court, that their NTA was deficient pursuant to *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), a precursor to *Niz-Chavez*. In *Pereira*, the Supreme Court held that in the context of the stop-time rule, "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a notice to appear under section 1229(a), and so does not trigger the stop-time rule." *Id.* at 2113–14 (internal quotation marks omitted).

Many petitioners have argued that *Pereira* should be extended to the *in absentia* context such that when an NTA is deficient under *Pereira*, an *in absentia* order is invalid. *See, e.g.*, *Rodriguez*, 15 F.4th at 353 ("Rodriguez urged that he did not receive the NOH and that the NTA he received was insufficient notice under the Supreme Court's decision in *Pereira v. Sessions*." (footnote omitted)). And those petitioners raised this argument under *Pereira* before the BIA in the first instance. *See, e.g.*, *Urbina-Urbina v. Garland*, No. 20-60617, 2022 WL 1316209, at *1 (5th Cir. May 3, 2022) (raising lack of statutory notice pursuant to *Pereira* in brief to BIA); *Requeno-Gomez v. Garland*, No. 20-61096, 2022 WL 2643363, at *1 (5th Cir. July 8, 2022) (vacating BIA decision to deny reopening based on deficient NTA that was first raised pursuant to *Pereira*).

We also note that there was a circuit split on *Niz-Chavez*-like issues before *Niz-Chavez*. *See Mauricio-Benitez v. Sessions*, 908 F.3d 144, 147–49 & n.1 (5th Cir. 2018) (indicating that NTA that did not state a time or place of the removal hearing was acceptable for removal *in absentia*); *Banuelos v. Barr*, 953 F.3d 1176, 1183–84 (10th Cir. 2020) (pre-*Niz-Chavez* case holding that NTA that did not state a time or place of the removal hearing was inadequate for purposes of stop-time rule), *cert. denied*, No 20-356, 2021 WL 1725170 (May 3, 2021); *cf. Spagnol-Bastos v. Garland*, 19 F.4th 802, 808 (5th Cir. 2021) ("It is of no consequence that then-valid Fifth Circuit precedent foreclosed his [*Pereira*] argument at the time he submitted his opening brief

because that argument was nonetheless available to him. Indeed, two sister circuits had already rejected the two-step notice theory.").

Cecilio Rodriguez did not exhaust her defective NTA claim in the same manner as other petitioners who raised the issue under *Pereira* before *Niz-Chavez* and this court's *Rodriguez*. *See Sanchez Martin v. Garland*, No. 19-72782, 2022 WL 819784, at *3 (9th Cir. Mar. 17, 2022) (unpublished) ("Petitioners did not adequately exhaust the further contention that the failure to provide a complete notice to appear in a single document . . . means that the necessary conditions for issuing an *in absentia* removal order . . . were not met."). Because Cecilio Rodriguez failed to raise this argument before the BIA, we conclude that we lack jurisdiction to consider her argument that her notice to appear was insufficient. We therefore dismiss this portion of the petition.

## IV.

Because substantial evidence supports the IJ's and BIA's conclusion that Cecilio Rodriguez failed to provide the government, either the Immigration Court or ICE, with an updated address, she forfeited her right to notice under § 1229a(b)(5)(B). The BIA did not abuse its discretion in declining to reopen due to lack of notice. We likewise find no abuse of discretion regarding the denial to reopen for exceptional circumstances. Cecilio Rodriguez's claims based on her new evidence and insufficient notice under *Niz-Chavez* were not exhausted before the BIA, and we are therefore without jurisdiction to consider them.

We accordingly DENY in part and DISMISS in part the petition.